**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| EVANS RAY, JR. | * | |
| Petitioner, | * | |
| v. | * | Civil No. AW-11-2684 |
| | * | Criminal No. AW-04-0559 |
| UNITED STATES OF AMERICA | * | |
| Respondent. | * | |

*****************************************************************************

## MEMORANDUM OPINION

Before the Court is Petitioner/Defendant Evans Ray, Jr. ("Petitioner")'s Motion to Vacate, Set Aside, or Correct a Sentence under 28 U.S.C. § 2255. For the reasons set forth below, the Court will, by separate Order, **DENY** Petitioner's Motion.

**I.    BACKGROUND**

After a federal grand jury in the District of Maryland released a Fifth Superseding Indictment against Petitioner Evans Ray, Jr., his case proceeded to a jury trial. Petitioner was convicted of distribution of 50 grams or more of crack cocaine, in violation of 21 U.S.C. § 841, and possession of ammunition and firearms by a convicted felon, in violation of 18 U.S.C. § 922(g). Trial Tr., at 1039:5-1042:13. On May 15th, 2007, Petitioner was sentenced to life imprisonment, after the Court reconsidered an earlier decision to decline to impose the mandatory sentence required by 21 U.S.C. § 841(b)(1)(A). Trial Tr., at 1074:15-17, 1078, 1085:12-13. Petitioner appealed, and the Fourth Circuit upheld his conviction and sentence on February 26th, 2010. *United States v. Ray*, 367 F. App'x 478 (4th Cir. 2010). He filed this petition on September 19th, 2011. Doc. No. 611.

1

Law enforcement learned of Petitioner's involvement in the drug trade via a cooperating witness and wiretapped phone conversations. Trial Tr., at 53:15-63:18. After a controlled purchase of narcotics, agents began wiretapping the phone of Stevie Burton, one of Petitioner's alleged collaborators. *Id.* at 56:21-23. DEA Agent Tom Hickey testified that phone conversations between Petitioner and Burton concerned drugs, and, on rebuttal, testified that Burton told him the phone conversations were about drugs. *Id.* at 971:10-20.

In May 2004, confidential informant Timothy Patterson informed law enforcement that Petitioner was his friend from prison and a supplier of cocaine. *Id.* at 283:7-16. Patterson testified that he had a chance encounter with Petitioner in 2001 or 2002, where Petitioner informed Patterson that he could supply "all the cocaine you want." *Id.* at 281:6-12. Law enforcement then arranged for Patterson to engage in controlled purchases of cocaine from Petitioner. *Id.* at 66:2-67:17. Patterson testified that he asked Petitioner to sell him cocaine two or three times before Petitioner told him that he would "see what he could do." *Id.* at 392:13-23. DEA and FBI agents began to record conversations between Patterson and Petitioner on June 29th, 2004. *Id.* at 66:10-12. Nothing on the recordings suggests that Petitioner was hesitant to sell Patterson cocaine. *Id.* at 287:2-322:13. The recordings do, however, suggest that Petitioner had multiple sources of cocaine, and had customers other than Patterson. *Id.* at 397:7-17, 860:2-8.

Law enforcement then had Patterson participate in two recorded, controlled purchases of narcotics from petitioner. At the first, on July 12th, 2004, Patterson purchased about 62 grams of powder cocaine from Petitioner for $1800. *Id.* at 124:3-15. On July 20th, 2004, Petitioner sold Patterson 61 grams of crack cocaine for $1900. *Id.* at 139:2-12, 146:22-147:7. Law enforcement then executed a search warrant on Petitioner's home on December 16th, 2004. *Id.* at 463:22-

464:2. They found a nine millimeter semi-automatic handgun on the premises, along with a box of nine millimeter ammunition, and a .40 caliber gun. *Id.* at 472:14-20, 525:12-22, 527:2-13.

At trial, Petitioner asserted an entrapment defense and requested a jury instruction that read: "the fact, if it is a fact, that Mr. Ray may have committed prior offenses of a similar character does not by itself require you to conclude that he was ready and willing to commit the offense with which he is now charged." *Id.* at 745:13-16. The court refused to adopt this instruction, instead giving a model instruction that read:

> The next instruction is 55. This is the entrapment defense. The defendant here, I believe, is going to assert and has asserted a defense that he was a victim of entrapment by an agent of the government. While the law permits the government agents to trap an unwary criminally-minded person, the law does not permit the government agents to entrap an unwary innocent.
>
> Thus, a defendant may not be convicted of a crime if it was the government who gave the defendant the idea to commit the crime, if it was the government who also persuaded him to commit the crime, and if he was not ready and willing to commit the crime before the government official or agents first spoke with him.
>
> On the other hand, if the defendant was ready and willing to violate the law and the government merely presented him with an opportunity to do so, that would not constitute entrapment.
>
> Your inquiry on this issue should first be to determine if there is any evidence that a government agent took the first step that led to a criminal act. If you find there was no such evidence, there can be no entrapment and your inquiry on this defense should end there.
>
> If, on the other hand, you find some evidence that a government agent initiated the criminal acts charged in the indictment, then you must decide if the government has satisfied its burden to prove beyond a reasonable doubt that prior to being approached by the government agents, the defendant was ready and willing to commit the crime. If you find beyond a reasonable doubt that the defendant was predisposed, that is, ready and willing to commit the offenses charged and merely was awaiting a favorable opportunity to commit them, then you should find that the defendant was not the victim of entrapment.
>
> On the other hand, if you have a reasonable doubt that the defendant would have committed the offense charged without – if you have a reasonable doubt that the

      defendant would have committed the offenses charged without the government's inducements, you must acquit the defendant. That's instruction 55.

Under these instructions, Petitioner was found guilty of distribution of 50 grams or more of crack cocaine, in violation of 21 U.S.C. § 841, and possession of ammunition and firearms by a convicted felon, in violation of 18 U.S.C. § 922(g). Trial Tr., at 1039:5-1042:13.

## II. ANALYSIS

In support of his Motion filed under 28 U.S.C. § 2255, Petitioner asserts that he was denied the effective assistance of counsel. Doc. No. 651. The Court reviews claims of ineffective assistance of counsel under the well-established standard of *Strickland v. Washington*, 466 U.S. 668 (1984). In order to succeed on a claim of ineffective assistance of counsel, a convicted defendant must: (1) "show that counsel's performance was deficient[]" and (2) "show that the deficient performance prejudiced the defense." *Id.* at 687-88.

The deficiency prong of the ineffective assistance of counsel prong is satisfied only by a "showing that counsel's performance was so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. When the Court reviews for deficiency of performance, the petitioner must show that "counsel's performance fell below an objective standard of reasonableness." *Id.* at 688. The proper guidepost for review is "prevailing professional norms," and the Court is to be "highly deferential" to counsel's decisions. *Id.* at 688-89. The petitioner must overcome a presumption that "the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

4

After the petitioner establishes deficiency, he must then demonstrate that counsel's inadequate performance prejudiced him. *Id.* at 687. To show prejudice, the petitioner must demonstrate that "there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *Id.* at 694. Even an unreasonable error by counsel cannot establish prejudice "if the error had no effect on the judgment." *Id.* at 691 (citing *United States v. Morrison*, 449 U.S. 361, 364-65 (1981)). Because the motion, records, and files conclusively show that the Petitioner is not entitled to relief, an evidentiary hearing is not necessary. *See* 28 U.S.C. § 2255(b). For the reasons stated below, counsel's service was not deficient or prejudicial, and Petitioner's Motion will be denied.

1. **Petitioner's claim that counsel did not adequately apprise him of plea negotiations**

Petitioner argues that counsel did not adequately inform him about ongoing plea negotiations. However, he is not able to establish prejudice under *Strickland*. In arguing prejudice, petitioner relies upon *post hoc*, self-serving statements that he would have accepted a plea agreement. Doc. No. 651-1, at 13; Doc. No. 651-3, at ¶ 11-13. This is not sufficient. A petitioner needs more than a "bald assertion" that he would have consummated a plea agreement to establish prejudice. *Fields v. Attorney Gen. of Md.*, 956 F.2d 1290, 1297-98 (4th Cir. 1992); *see also Toro v. Fairman,* 940 F.2d 1065, 1068 (7th Cir. 1991). Here, Petitioner cites only to his own affidavit and his wife's affidavit in support of the proposition that he would have accepted a plea agreement. Doc. No. 651-1, at 13. This is precisely the kind of bald assertion that is insufficient to demonstrate prejudice.

2. **Petitioner's claim that counsel failed to adequately research the law and prepare for trial**

Petitioner argues that McDaniel's lack of knowledge of pre-disposition evidence, or his failure to appreciate the legal significance of such evidence, entitles Petitioner to relief. Petitioner cannot establish either prong of *Strickland*. In arguing prejudice, Petitioner claims that he detrimentally relied on McDaniel, and that reliance deprived him of due process. Doc. No. 651-1, at 17. Nonetheless, Petitioner presents no legal theories that McDaniel could have advanced in place of the doomed entrapment defense.

Moreover, Petitioner asserts that McDaniel's lack of preparation led to his failure to cite relevant authority on the entrapment issue on a motion for a judgment as a matter of law, and his failure to request a jury instruction explaining the Petitioner's prior convictions could not, alone, be used to establish pre-disposition. *Id*. at 16. Both of these arguments are defeated by the overwhelming evidence of pre-disposition that was presented at trial. As the Fourth Circuit explained,

> We find that the district court's refusal to give Ray's requested instruction did not seriously impair Ray's ability to conduct his defense. As noted above, the Government presented a considerable amount of evidence, apart from Ray's prior convictions, from which a jury could conclude that Ray was predisposed to deal in crack cocaine. Given this evidence, it is difficult to see how Ray was prejudiced by the district court's refusal to adopt Ray's proposed instruction.

*Ray*, 367 F. App'x at 481. Indeed, this defeats Petitioner's instruction argument on two levels: First, it establishes that the instruction in question was, in fact, requested at trial, meaning there was no deficiency of representation. Second, it establishes that even if the instruction was not requested, the instruction's absence could not have prejudiced Petitioner because the evidence was overwhelmingly stacked against him. The Government's evidence demonstrated that Petitioner had significant drug trafficking paraphernalia, including a scale with cocaine residue. *Id*. at 480-81. Recordings of Petitioner established that he had multiple sources of drugs, and had

6

customers other than CI Patterson. *Id*. at 480. Moreover, evidence demonstrated that Petitioner offered to sell Patterson drugs before Patterson became involved with law enforcement. *Id*. Hence, there was more than enough evidence to demonstrate Petitioner's pre-disposition. Petitioner could not have been entitled to judgment as a matter of law, and he was not prejudiced by the lack of a favorable jury instruction.

### 3. Petitioner's claim that counsel failed to adequately use available evidence and witnesses at trial

Petitioner argues that McDaniel's failure to call certain rebuttal witnesses to answer Agent Hickey's testimony, failure to contest Petitioner's ownership of the scale, and failure to explain that Petitioner's knowledge of drug lingo was part-and-parcel with his prior experiences entitles him to relief. Doc. No. 651-1, at 1. Again, Petitioner cannot establish prejudice due to the overwhelming amount of evidence establishing his pre-disposition. *Ray*, 367 F. App'x at 380-81. Petitioner's prior convictions, the recordings revealing that Petitioner had multiple customers, his possession of firearms, and Patterson's testimony that Petitioner offered to sell him drugs all establish, overwhelmingly, that Petitioner was predisposed to sell drugs. *Id*. at 380. He could not have been prejudiced by counsel's alleged shortcomings.

Moreover, the standard for deficiency in determinations of witness calls is exceedingly high. The Fourth Circuit noted:

> [W]e "must indulge a strong presumption ... that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotation marks omitted). The difficulty of overcoming that general presumption is even greater in this case, given that "the decision whether to call a defense witness is a strategic decision" demanding the assessment and balancing of perceived benefits against perceived risks, and one to which "[w]e must afford ... enormous deference."

7

*United States v. Terry*, 366 F.3d 312, 317 (4th Cir. 2004) (quoting *Strickland*, 466 U.S. at 689; *United States v. Kozinski*, 16 F.3d 795, 813 (7th Cir. 1994)). Furthermore, the determination of which witnesses to call is a function of counsel, even if the defendant disagrees. *United States v. Chapman*, 593 F.3d 365, 369 (4th Cir. 2010). Petitioner has asserted nothing to suggest that the decision not to call the witnesses in question was anything but a strategic choice made by McDaniel. Petitioner merely asserts that these witnesses may have assisted his case. That is not enough to overcome the "enormous deference" we must give to counsel's conduct.

### 4. Petitioner's claim that counsel failed to object to Agent Hickey's testimony

Petitioner argues that McDaniel's performance was deficient because he failed to object to Agent Hickey's testimony that a recorded conversation between Stevie Burton and Petitioner concerned drugs. Petitioner argues that Hickey's testimony was impermissible hearsay based on an interview that Hickey conducted with Burton. This claim lacks merit. Petitioner mischaracterizes Agent Hickey's testimony. Agent Hickey had significant expertise in understanding and interpreting code language used by drug dealers; he had been involved in dozens of such cases, and had undergone a 16-week training course in which he was taught confidential source management and how to conduct undercover purchases. Trial Tr., at 50:11-51:22. That Agent Hickey interviewed Burton about "what the phone call was about" does not denigrate Agent Hickey's expertise. As the Fourth Circuit has explained, "[u]nsurprisingly, then, courts of appeals have routinely held that law enforcement officers with extensive drug experience are qualified to give expert testimony on the meaning of drug-related code words." *United States v. Wilson*, 484 F.3d 267, 275 (4th Cir. 2007). Agent Hickey's testimony was permissible. McDaniel's performance was, therefore, not deficient in failing to object to Agent Hickey's testimony, and his failure to object was not prejudicial.

### 5. Petitioner's assertion that counsel did not request a beneficial jury instruction

Petitioner argues that McDaniel failed to ask for a jury instruction explaining that his two prior convictions are not conclusive evidence of pre-disposition. The Fourth Circuit has already ruled the failure to include this jury instruction did not significantly impact Petitioner's defense:

> We find that the district court's refusal to give Ray's requested instruction did not seriously impair Ray's ability to conduct his defense. As noted above, the Government presented a considerable amount of evidence, apart from Ray's prior convictions, from which a jury could conclude that Ray was predisposed to deal in crack cocaine. Given this evidence, it is difficult to see how Ray was prejudiced by the district court's refusal to adopt Ray's proposed instruction.

*Ray*, 367 F. App'x at 481. The other evidence suggesting predisposition has already been discussed at length. It is clear that Petitioner was not prejudiced by McDaniel's alleged failure to ask for this jury instruction.

Petitioner further argues that McDaniel failed to ask for a special informant instruction. However, the Fourth Circuit recently held that a special informant instruction is required where the informant seeks out law enforcement affirmatively, and where there is little corroborating evidence of the informant's testimony. *United States v. Luck*, 611 F.3d 183, 188 (4th Cir. 2010). Here, Patterson did not affirmatively approach law enforcement; he agreed to help law enforcement as part of a plea agreement in 2004. Trial Tr., at 281:24-283:23. And once again, the evidence suggesting Petitioner's pre-disposition was not limited to Patterson's testimony; it was overwhelming. *Ray*, 367 F. App'x at 481. Petitioner has done nothing to demonstrate that

the outcome of the trial would have, to a reasonable probability, differed if such an instruction were given.

6. **Petitioner's arguments that counsel failed to properly preserve and object to the Court's restriction on cross-examination of Agent Hickey, and that counsel failed to preserve or argue sentencing entrapment or sentencing manipulation**

Petitioner asserts that counsel simply accepted a limitation on cross-examination of Agent Hickey, preventing counsel from delving into potential sentencing entrapment. Doc. No. 651-1, at 21-22. Petitioner further asserts that counsel erred by failing to preserve for appeal or argue sentencing entrapment or sentencing manipulation at trial. *Id*. at 22-23. Both of these arguments rely on either sentencing entrapment or sentencing manipulation having been a viable defense at Petitioner's trial. They were not. In *United States v. Jones*, 18 F.3d 1145, 1155 (4th Cir. 1994), the Fourth Circuit held:

> Just as it is not outrageous for law enforcement authorities proceeding in an undercover "buy" to attempt to bargain with a seller of narcotics into selling an amount which constitutes a crime for the sole purpose of obtaining a conviction, we find it not outrageous for the government to continue to purchase narcotics from willing sellers even after a level of narcotics relevant for sentencing purposes has been sold.

*Jones* provides a clear rationale for why sentencing entrapment and sentencing manipulation are exceedingly difficult arguments for defendants to make:

> By their nature, sting operations are designed to tempt the criminally inclined, and a well-constructed sting is often sculpted to test the limits of the target's criminal inclinations. Courts should go very slowly before staking out rules that will deter government agents from the proper performance of their investigative duties.

*Id*. (quoting *United States v. Connell*, 960 F.2d 191, 196 (1st Cir. 1992)).

In *Jones*, the Government continued to purchase crack cocaine after a successful controlled purchase, ultimately buying 81 grams of crack cocaine over the course of 29

10

controlled transactions. *Id*. at 1147. Here, similarly, the Government's confidential informant purchased crack cocaine after purchasing a significant amount of powder cocaine. Trial Tr. at 56:10-20. The *Jones* court, relying on this rationale, rejected the defendant's assertion that the Government engaged in sentencing entrapment. *Jones*, 18 F.3d at 1115. There is no language in *Jones* that would establish a legally meaningful distinction between the increase in volume seen in *Jones*, and the shift in type of drug purchased that we see in the instant action. Put more simply, sentencing entrapment and sentencing manipulation were not viable arguments at Petitioner's trial. Because these arguments would not have reasonably succeeded in altering the verdict or sentencing, counsel did not err by failing to present them. Further, their lack of viability also necessarily means that even if counsel's performance had been deficient, the deficiency could not have prejudiced the defendant.

7. **Petitioner's argument that counsel failed to object to Petitioner's absence during critical trial proceedings**

Petitioner argues that counsel should have objected to his absence during two specific meetings, one when jury instructions were discussed, and another after the jury sent a note to the judge. Doc. No. 651-1, at 23-24. Petitioner had a "right to be present at all critical stages of his trial. As a constitutional matter, a defendant thus has the right 'to be present at all stages of the trial where his absence might frustrate the fairness of the proceedings.'" *United States v. Rolle*, 204 F.3d 133, 136 (4th Cir. 2000) (quoting *Faretta v. California*, 422 U.S. 806, 819 (1975)).

The two instances cited by Petitioner are minor. Petitioner was in the courtroom whenever the jury was. Petitioner's argument does not reveal what the jury note concerned, nor does Petitioner claim that he would have counseled his attorney to act differently than he did. Doc. No. 651-1, at 23-24. Indeed, Petitioner makes no argument that his absence at this meeting

would frustrate the proceeding's fairness; he merely makes a self-serving statement that he would have given input. Because there is no question of fairness, counsel's performance was not deficient in not informing Petitioner of the meeting to discuss the jury note. Moreover, Petitioner has not made any argument as to how his input would have altered the outcome of the trial. *Strickland*, 466 U.S. at 694. There is no reason to believe that it would have, meaning Petitioner's argument cannot meet the *Strickland* prejudice test.

As to the meeting concerning jury instructions, this was the first of two meetings where the court discussed jury instructions regarding entrapment. In this first meeting, the court ended the discussion of the entrapment instruction until Petitioner could be present for it. Trial Tr., at 676-677. The exchange between the court and McDaniel was very brief, especially when compared to the much more substantive second hearing, for which Petitioner was present. *Id.* at 676-677; 732-747. Essentially, the court stopped the initial hearing before Petitioner's absence would have "frustrate[d] the fairness" of the proceedings. *Rolle*, 204 F.3d at 136. When the court actually heard substantive arguments on the jury instruction issue, Petitioner was present and could have given all the input he wanted. Trial Tr., at 732-747. Hence, there was neither deficiency nor prejudice: the first hearing ended before McDaniel was obligated to bring in Petitioner, and Petitioner had the opportunity to give input when substantive arguments were made.

8. **Petitioner's argument that counsel failed to object to and preserve for review the District Court's failure to comply with 21 U.S.C. § 851**

Petitioner argues that the District Court failed to properly conduct an § 851 colloquy at sentencing, and that counsel failed to object to this alleged failure and properly preserve it for appeal. Doc. No. 651-1, at 24-25. The relevant portion of 21 U.S.C. § 851 reads:

> If the United States attorney files an information under this section, the court shall after conviction but before pronouncement of sentence inquire of the person with respect to whom the information was filed whether he affirms or denies that he has been previously convicted as alleged in the information, and shall inform him that any challenge to a prior conviction which is not made before sentence is imposed may not thereafter be raised to attack the sentence.

Petitioner asserts that the District Court failed to fulfill the requirements of the law. The record indicates that no § 851 colloquy was performed; the court, after announcing the sentence, asked McDaniel how his client would respond if the colloquy were performed post-sentencing. Trial Tr., at. 1087-89. Counsel responded that his client would refuse to answer any questions, as the sentence had already been pronounced twice. *Id.* at 1087-89. Based on this answer, the District Court chose not to conduct the colloquy. *Id*. Nonetheless, throughout McDaniel's sentencing argument, he makes reference to Petitioner's prior convictions. *Id.* at 1054-55. Counsel makes reference to the § 851 notice in an attempt to persuade the court that Petitioner's prior convictions should not render him a career criminal. *Id.* This makes it clear that counsel's decision not to object to the lack of colloquy was a strategic decision made by McDaniel, who undoubtedly felt that the most credible strategy was to admit that Petitioner's prior convictions were valid, but argue that the remoteness of the convictions render them less relevant to the instant sentencing. Hence, Petitioner's argument does not overcome a presumption that "the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689. McDaniel made a strategic choice that cannot be considered deficient.

Beyond that, Petitioner cannot establish prejudice. Petitioner asserts no grounds on which his prior convictions could have been challenged. He also asserts no ways in which McDaniel misused his prior convictions in argument at sentencing. In cases where the § 851 colloquy is absent, the petitioner must actually assert some viable reason why the prior convictions could be

challenged. *See United States v. Cave*, 203 F. App'x 536, 539 (4th Cir. 2006) (unpub.) (citing *Strickland*, 466 U.S. at 687-88). Petitioner here does not do so.

### 9. Petitioner's argument that counsel failed to argue that a life sentence for Petitioner violated the 8th Amendment

Petitioner argues that counsel should have argued that a life sentence violated the Eighth Amendment. Doc. No. 651-1, 25-26. Nonetheless, "the law is well settled that mandatory life sentences are constitutional when applied to prior drug felony offenders." *United States v. Kratsas*, 45 F.3d 63, 65 (4th Cir. 1995). In *Harmelin v. Michigan*, 501 U.S. 957, 995-96 (1991), the Supreme Court rejected a claim that a mandatory sentence of life without parole was unconstitutional for an offender found with a large amount of cocaine. Petitioner similarly dealt a large amount of crack cocaine to Patterson.

Regardless, *Solem v. Helm*, 463 U.S. 277, 292 (1983) requires a three-prong test to determine if a life sentence is constitutional: "(i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." None of these factors weigh in favor of Petitioner. The Fourth Circuit notes, "The gravity of [the defendant's] offense is great. Drug use, and the use of crack in particular, has become a pervasive, destructive force in American society." *United States v. D'Anjou*, 16 F.3d 604, 613 (4th Cir. 1994). In a world where drug use and addiction is increasingly problematic, harsh punishments are justified for those who profit from such destruction. Indeed, "given that drug dealers themselves sentence many individuals to a lifetime of addiction and dependency, a life sentence for repeatedly dealing drugs cannot be considered disproportionately cruel and unusual." *Id*. (quoting *United*

*States v. Meirovitz*, 918 F.2d 1376, 1381 (8th Cir. 1990)). Petitioner's criminal history only adds to the gravity of his offense. Essentially, the Fourth Circuit, in agreement with other circuits, has found that "a life sentence for a major drug violation is not disproportionate in comparison with other sentences under the Guidelines." *D'Anjou*, 16 F.3d at 614. Petitioner's Eighth Amendment argument is fruitless. Counsel's performance was not deficient, and Petitioner was not prejudiced by counsel's failure to further an invalid argument.

**10. Petitioner's assertion that he did not receive effective appellate counsel**

"Counsel's failure to pursue a basis for appeal by reason of a mere miscalculation of the likelihood of success does not constitute constitutionally ineffective representation." *United States v. Mikalajunas*, 186 F.3d 490, 493 (4th Cir. 1999). An appellate attorney need not raise every non-frivolous argument that her client wants her to raise. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). "Indeed, '[w]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Bell v. Jarvis*, 236 F.3d 149, 164 (4th Cir. 2000) (citing *Smith v. Murray*, 477 U.S. 527, 536 (1986)). That said, "a petitioner may establish constitutionally inadequate performance if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Id.* at 180 (citing *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994)).

Petitioner argues that his appellate counsel, J. James Roos, III, failed to provide effective assistance. Doc. No. 651-1, at 26-28. Specifically, Petitioner asserts that he instructed counsel to make seven specific arguments: insufficiency of evidence supporting predisposition, sentencing entrapment/manipulation, restriction on cross-examination of DEA Agent Hickey, refusal to

grant jury instruction concerning use of Petitioner's prior convictions as evidence of predisposition, Agent Hickey's improper interpretation of wiretap conversations, Petitioner's absence during critical moments of the trial, and failure of the government to give defendant a proper § 851 notification. *Id*. The Court has already discussed each of these alleged failures in this Opinion, and has concluded that Petitioner's arguments are without merit. As the court has previously stated, none of these arguments were at all likely to succeed. This is precisely the conclusion that Roos came to upon reading Petitioner's letter. Doc. No. 665-2. Counsel's decision not to raise meritless arguments is not a deficiency, and it did not prejudice Petitioner. The issues discussed by Petitioner are not "significant and obvious issues" reasonably calculated to afford Petitioner relief. *Bell*, 236 F.3d 149, 180.

Petitioner additionally asserts that Roos improperly relied on the wrong statute in arguing that Petitioner was inappropriately sentenced. Despite this assertion, Petitioner does not assert an argument that his appeal would have succeeded had Roos correctly relied on § 851. The court cannot reasonably conclude that Petitioner's sentence would have been overturned had Petitioner's position been properly argued.

**11. Petitioner's argument that the Fair Sentencing Act entitles him to a lesser sentence**

Petitioner argues that under the Fair Sentencing Act (FSA), signed in 2010, he is entitled to a sentence lower than life imprisonment. This argument is without merit. The Supreme Court held that the FSA applies to individuals whose crimes preceded August 3rd, 2010, but who are sentenced after that date. *Dorsey v. United States*, 132 S.Ct. 2321, 2331 (2012). Moreover, in the Fourth Circuit, the FSA does not apply retroactively. *United States v. Bullard*, 645 F.3d 237, 249 (4th Cir. 2011). Petitioner was sentenced on May 15th, 2007, prior to the passage of the FSA.

Trial Tr., at 1078-1089. The Fourth Circuit decided his appeal on the merits on February 26th, 2010. *Ray*, 367 F. App'x 478. The District Court properly imposed Petitioner's sentence, and the FSA does not provide Petitioner relief.

**12. Petitioner's assertion that the Government improperly withheld evidence**

Petitioner asserts that the government improperly withheld exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). Doc. No. 651-1, at 33. "There are three fundamental components to a *Brady* claim: (1) 'The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching'; (2) the 'evidence must have been suppressed by the State'; and (3) the evidence must be material to the defense, that is, 'prejudice must ... ensue[ ].'" *Walker v. Kelly*, 589 F.3d 127, 137 (4th Cir. 2009) (quoting *Strickler v. Greene*, 527 U.S. 263, 281-82 (2009)). "The strictures of *Brady* are not violated, however, if the information allegedly withheld by the prosecution was reasonably available to the defendant . . . . [W]here the exculpatory information is not only available to the defendant but also lies in a source where a reasonable defendant would have looked, a defendant is not entitled to the benefit of the *Brady* doctrine." *Hoke v. Netherland*, 92 F.3d 1350, 1355 (4th Cir. 1996) (citing *United States v. Wilson*, 901 F.2d 378, 381 (4th Cir.1990)).

Petitioner asserts that the government withheld evidence of testimony given by Stevie Burton that contradicts the testimony of Agent Hickey. Doc. No. 651-1, at 33. The testimony in question was given after Burton filed a motion to withdraw his guilty plea. The court denied Burton's motion on January 7th, 2007, more than a month before Petitioner's trial. *See Burton v. United States*, Case No. AW–04–0559, 2011 WL 4596040, at *1 (D. Md. 2011). This motion

was a matter of public record and was readily available to Petitioner, had he wanted to use it in his defense. A reasonable defendant would be following the testimony of others embroiled in criminal litigation based on the same series of events as the defendant. As a result, Petitioner "is not entitled to the benefit of the *Brady* doctrine." *Hoke*, 92 F.3d at 1355.

The Court has reviewed the current pleadings and the files relative to the present Motion and the underlying criminal case in their entirety. The Court finds that Petitioner has not demonstrated a cognizable basis for relief. Accordingly, Petitioner's Motion pursuant to § 2255 is DENIED.

**A Certificate of Appealability**

There is no absolute entitlement to appeal a district court's denial of a Motion under § 2255. *See* 28 U.S.C. § 2353(c)(1). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). To meet this burden, an applicant must show that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 475 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983)). It is the Court's view that Petitioner has raised no arguments which causes this Court to view the issues as debatable, or finds that the issues could have been resolved differently, or to conclude that the issues raise questions which warrant further review. Accordingly, the Court denies a Certificate of Appealability.

A separate order will be issued.

__July 31, 2013_                                                 _____/s/_____
        Date                                                              Alexander Williams, Jr.
                                                                          United States District Judge